### HEIRS OF JOURDAN v. HEIRS OF GRAVIER.

By a statute of the Legislature, passed in 1850, the Second Municipality was authorized to lay off streets through a portion of its batture, acquired by donations under a notarial act made by the donors, in September, 1820; and in case of an agreement being made with the original parties to that act, for the sale of the batture, the corporation was authorized and required to lay off the same into lots, to sell said lots, and to divide the proceeds according to the terms of such agreement; provided, one third of the net proceeds of sale should be reserved for the liquidation of the debts of the old corporation of New Orleans. Under the provisions of the statute, a notarial act of agreement was passed on the 30th June, 1851, between the representatives of the parties who signed the act of donation of 20th September, 1820, (among them the heirs of *Gravier*—the defendants,) and the Second Municipality of New Orleans, by which it was agreed that streets should be laid off and the squares between the streets sold, the net proceeds to be divided, one third to the general sinking fund, or old corporation of New Orleans; one third to Municipality No. 2, and the remaining third " to the original parties to the contract of 20th September, 1820, or to the heirs or legal representatives thereof, whose assent is given to the present agreement, each one respectively to receive in proportion to the front of the lots or portions of ground originally owned by him, as shown by the said contract." The sale was made, and *Denis*, one of the defendants, as agent of the heirs of *Gravier*, received one third of the proceeds of certain lots, being those lying opposite the frontage, assigned to the heirs of *Gravier*, in the contract of the 20th, September, 1820. The heirs of *Jourdan* brought this suit to recover of the defendants, the heirs, of *Gravier*, the proceeds of lots sold under the contract of the 30th of June, 1851, which were situated opposite the ground assigned to their ancestor by a " transaction" between him and, the heirs on the 21st of February, 1821. *Held :* The question presented, correctly considered, is, purely a question of fact: Have the heirs of *Gravier* acknowledged the title of *Jourdan*, the ancestor of plaintiffs to the batture, *outside of New Levee street*, in front of the lower half of his lot on Tchoupitoulas street, in the notarial act of February 21st, 1821 ? *By the Court :* the plaintiffs claim a portion of the proceeds of the sale of the batture, as belonging to them under the notarial act of 21st of February, 1821, and as having been received by a party who had concluded himself by that act, from disputing their right of ownership in a portion of the batture outside of New

JOURDAN  Levee street, and they insist that the money so received by defendants, is to be deemed, as re-
*v.*  ceived for the account of them, the plaintiffs. But the court held that the plaintiffs were not en-
GRAVIER.  titled to recover.

APPEAL from the Sixth District Court of New Orleans, *Cotton,* J.
    *Janin & Griffon,* for plaintiffs.    *Denis & Roselius,* for defendants and appellants.

BUCHANAN, J.   On the 20th September, 1820, an Act was passed before *Lavergne,* Notary in New Orleans, between certain parties styling themselves the actual possessors of the batture in front of the faubourg, Saint Mary, of the one part, and the city of New Orleans of the other part, by which Act the parties of the first part donated to the parties of the second part (which accepted the donation) all the rights of said donors, each for what concerns him, in and to:

1st. All that portion of said batture existing between the outer foot of the new levee and the marginal line of the waters of the river at its lowest stage, and between the property of *William Montgomery,* Delord street above, and Canal street below.

2. The new levee, then lately constructed, and the soil upon which it reposed such as it shall be when the levee shall have been repaired (which by a subsequent part of the Act appears to be a width of sixty feet, constituting the present New Levee street.)

3d. The soil necessary for the prolongation of the streets of the faubourg St. Mary to the New Levee.

4th. The soil of Tchoupitoulas street, in all the extent of said faubourg, giving to said street a width of sixty feet, inclusive of the sidewalks.

Among the parties of the first part in this Act of donation, were the heirs of *Bertrand Gravier,* defendants herein ; and the proportions of each of said parties in the donation, were figured upon a plan annexed and referred to in the Act, by which it appears that the batture in question extended from Delord street above, to Common street below.  Upon this plan, the ground contained between Delord, Common, Tchoupitoulas and New Levee streets, (exclusive of the prolongation of Gravier, Poydras, Girod, Julia and St. Joseph streets) is divided into lots of various dimensions, numbered from one to twenty-four. Of these lots, that numbered fifteen, is referred to in the Act of donation as one of those belonging to the heirs of *B. Gravier.*

The donors bind themselves to defray the expenses of constructing a new levee and market house ; and for that purpose assess themselves at the rate of three hundred dollars for every thirty feet front claimed by them severally, for which assessment they furnish, in the same Act, their several promissory notes to the order of the Mayor of the city, payable at one and two years after date.   The amount of the assessment to the heirs of *B. Gravier,* upon a frontage of 845 feet 9 inches, was $9,697 50, for which amount they furnished their notes as aforesaid.

The donation was made on the condition that the land included in it, should remain inalienable and unseizable for debt or otherwise, in the hands of the city corporation, which could never, under any pretext, sell, exchange, give, or in any other manner dispose of the same, in whole or in part, in any manner whatever, nor employ it for other public uses than those to which it was destined by nature, nor even make any constructions or buildings thereupon, with the sole exception of a fire engine ; this restriction not to be interpreted as preventing the corporation from making wharves for the facility of commerce.

Subsequently to this donation, by the heirs of *Gravier*, to the city corporation, of all the batture between New Levee street and the river Mississippi, in front of lot No. 15, of the plan above refered to, the said heirs made a contract in the nature of a transaction with the ancestor of plaintiffs, *John Joseph Jourdan*, by authentic act before *Lavergne*, dated February 21st, 1821, of which the following are the material clauses: The contracting parties declared that *John Joseph Jourdan* is proprietor of a lot situated in the faubourg St. Mary, bounded below by the property of Mr. *Elie Victor Jourdan*, and above by that of *Louis Bartholemy Macarty*, measuring sixty-one feet, ten inches, French measure, front to Tchoupitoulas street; that in front of said lot belonging to said *Jourdan*, there exists a batture from Tchoupitoulas street to the margin of the river, following (to the river) the lateral lines of the said lot, upon which batture, or portion of batture, the said *Jourdan* and the heirs of *Gravier* pretend to have rights respectively, to-wit: the said heirs of *Gravier*, by inheritance and by partition made with *Edward Livingston*, and the said *Jourdan*, as riparian proprietor. Now, the contracting parties, wishing to avoid the lawsuits which might arise between them out of those respective pretensions, have agreed to terminate all difficulties in this regard by an amicable arrangement, and in form of transaction. They have, consequently, agreed to divide the said batture, or portion of batture, in litigation, so that the said *Jourdan* shall have the half, and the said heirs, *Gravier*, the other half,—which they have done and executed in the following manner:

Article 1st. In order to effect the execution of this transaction, the parties have agreed to refer to a plan made by *Pilié*, City Surveyor, as regulating their conventions. (Observe, that this plan includes the identical space of ground, figuring on the plan annexed to the Act of donation of 20th September, 1820, as lot No. 15, in said Act of donation stated to be in the actual possession of the heirs of *Gravier*; the only difference being, that, whereas, in the plan annexed to the donation, the lot extended unbroken from Tchoupitoulas to New Levee street, in the plan referred to in the transaction, said lot is cut into two equal portions by a street called Commerce street, running parallel to and between New Levee and Tchoupitoulas streets.)

Article 2d. By means of the operation represented on said plan, all the ground in litigation between the parties is found divided into two lots, figured on said plan by the letters A, B, C, D, E, F, G, H, leaving sixty feet wide for Thoupitoulas street, and forty feet for Commerce street.

Article 3d. The two said lots of ground are divided each into two equal portions by the perpendicular lines, which are represented on said plan, to the effect that the said *John Joseph Jourdan* may have for his share the two halves of said lots, adjoining the lots of *Elie Victor Jourdan* below, and the heirs of *Gravier*, for their share, the two other halves of said lots, adjoining the lots of Mr. *L. B. Macarty* above. The parties reciprocally transfer to each other all their rights in and to the portions of grounds thus assigned as the share of each in the partition.

It is well understood between the parties, pursues the Act, that the donation which the heirs of *Gravier* have made to the corporation of the city of New Orleans, of the levee and of the ground between the levee and the water's edge, by Act before the same notary, on the 20th September, 1820, remains approved and ratified by *John Joseph Jourdan*, in all that concerns the portion of said levee and ground which is situated in front of the halves of lots ceded to said *Jourdan*

JOURDAN
v.
GRAVIER.

by the present transaction, and this, in the same manner as if the said *Jourdan* had been a party to said Act, but under the benefit of the execution, on the part of said corporation of the obligations which it has assumed in said Act; it being well understood also, that said *Jourdan* puts himself in the place of the heirs of *Gravier* towards the undertakers, with whom they have treated for the portion of levee in front of the half lot cede l to him by the present Act.

In consequence of what precedes, all lawsuits or contestations between the parties, relative to the batture or portion of batture, are extinguished, the said parties renouncing respectively all rights, actions or pretensions contrary to the present agreement, which has between them the authority of a definitive judgment.

The Act of the Legislature dividing the city of New Orleans into Municipalities, approved March 8th, 1836, in its eleventh section, recognized the validity of the donation of the 20th September, 1820, and prohibited any municipal disposition of said batture in violation of that compromise.

But by another statute, approved 21st March, 1850, the eleventh section of the Act of 1836 was repealed in this particular, and the Second Municipality was authorized to lay off streets through a portion of said batture; and in case of an agreement being made with the original parties to the notarial act of September 20th, 1820, for the sale of the batture, the corporation was authorized and required to lay off the same into lots, to sell said lots, and to divide the proceeds according to the terms of such agreement; provided, one-third of the net proceeds of sale, should be reserved for the liquidation of the debts of the old corporation of New Orleans.

Under the provisions of this Act of the Legislature, a notarial act of agreement was passed on the 30th June, 1851, between the representatives of all of the parties who signed the act of donation of the 20th September, 1820, (among them the heirs of *Gravier*,) and the Second Municipality of New Orleans, by which, after a preamble to the effect that the batture had greatly increased since the 20th of September, 1820, and that a large portion of the same was no longer necessary for the purposes of a landing, it was agreed, that streets should be laid out upon the said batture conformably to a plan referred to; that the lots composing the squares or islets between the said new streets should be sold, and that the proceeds, after deducting expenses of sale, should be divided as follows: one third to the general sinking fund, or old corporation of New Orleans; one-third to Municipality No. Two; and the remaining third "to the original parties to the contract of the 20th September, 1820, or to the heirs or legal representatives thereof, whose assent is given to the present agreement, each one respectively to receive in proportion to the front of the lots or portions of ground originally owned by him, as shown by the said contract."

The sale was made accordingly, and *H. R. Denis*, one of the defendants, as agent of the heirs of *Gravier*, received, on the 18th November, 1853, one-third of the proceeds of certain lots, being those lying opposite the frontage assigned to the heirs of *Gravier* in the contract of 20th September, including the lot numbered 15 upon the plan referred to in said act, as already described.

The heirs of *John Joseph Jourdan* have instituted the present action to recover of the defendants the proceeds of sales of the lots sold under the contract of the 30th June, 1851, which were situated opposite to the ground assigned to their ancestor by the transaction of the 21st February, 1821. The petition charges, that "the defendants, *Kohn & Denis*, acting as agents of the heirs of *Gravier*, utterly disregarding the act of compromise of the 21st February, 1821,

and representing the heirs of *Gravier* as entitled to the one-third of the proceeds
of batture lots donated by *Jourdan* to the corporation of New Orleans, by the act
of compromise of 1821, claimed and received one-third of the proceeds of bat-
ture lots comprised between the continuation of the side lines of the lots which
became said *Jourdan's* share by said act of compromise of 1821, between New
Levee and Fulton streets, and between Fulton and Front streets."

We have been thus minute in detailing the stipulations of the various con-
tracts and the terms of the legislative enactments which have a bearing upon the
present controversy, because the question presented for our decision, correctly
considered, is purely a question of fact—namely: Have the heirs of *Gravier*
acknowledged the title of *Jourdan*, the ancestor of plaintiffs, to the batture *out-
side of New Levee street*, in front of the lower half of his lot on Tchoupitoulas
street, in the notarial act of February 21st, 1821 ?

A good deal of discussion has taken place at bar upon the original title to the
batture of the faubourg St. Mary, as between *Bertrand Gravier* and those who
purchased lots under him, fronting on Tchoupitoulas street, and all the decisions
upon the title to the batture in the Superior Court of the Territory of Orleans
and the Supreme Court of Louisiana, from 1807 down to 1841, have been re-
viewed in the argument of this cause. But we view such discussions as foreign
to the present issue. The plaintiffs do not claim the batture under their original
title, but they claim a portion of the proceeds of the sale of the batture, as be-
longing to them, under the notarial act of the 21st February, 1821, and as hav-
ing been received by a party who had concluded himself, by that notarial act,
from disputing their right of ownership in a portion of the batture outside of
New Levee street. And they insist that the money thus received by defendants,
is to be deemed as received for the account of them, the plaintiffs.

We do not think that the analysis of the notarial act of 1821 which we have
given, justifies these pretensions of the plaintiffs. We have seen, the parties
commence by declaring that *Jourdan* is the proprietor of a lot having a front on
Tchoupitoulas street; that there exists in front of said lot, and extending to the
margin of the river, a batture; that both parties *pretend* to have rights upon said
batture. The nature of those pretensions on each side is even declared in general
terms; but there is nothing which in the least resembles a recognition by either
of the contracting parties of the validity of the pretensions of the other. In
order, however, to avoid lawsuits, the parties agree to terminate all difficulties
by an amicable division of the property in dispute, or litigation, as they express
it. And what was the property so in litigation? The terms of the contract
answer that question most precisely. It was the ground between New Levee
and Commerce, and between Commerce and Tchoupitoulas streets, figured on a
plan referred to in the act as comprised within letters A, B, C, D and E, F, G, H.
The article second of the contract declares this to be all the ground in *litigation*
*between the parties*. In fact, under the state of things existing on the 21st Feb-
ruary, 1821, and under the other conventions of the parties contained in the
same contract, it was impossible that they should have contemplated or in-
cluded in their partition, any portion of the batture outside of New Levee street.
For one of the contracting parties (*Gravier's* heirs) had made, on the 20th
September previously, a formal and irrevocable donation of all the rights *which
it had or might have* in the batture outside of New Levee street, to the city cor-
poration ; and the other contracting party, in this very contract, approves and
and ratifies the said donation, as if he had been a party to the act. On the 21st

February, 1821, therefore, both the contracting parties had solemnly divested themselves of any title which they might have had to the batture outside of Levee street. But it is argued that the ratification of the act of the 20th September, 1820, by *Jourdan*, was made with an express reservation of the execution on the part of the corporation of the obligations imposed upon it by the said act. This is true; but it seems to us entirely illogical to give the effect to that reservation which the plaintiffs' counsel have sought to deduce from it. The violation by the city of the restrictions upon their use and enjoyment of the property donated in 1820, cannot have the effect of extending the meaning and enlarging the operation of a compromise between other parties, in 1821, respecting property in litigation between those parties, different from that donated. The violation by the donee of the conditions of the donation, or the rescission of the donation by common consent of the original parties to the donation, might have the effect of reviving in pristine vigor the pretensions of the heirs of *Jourdan*, such as they existed prior to 21st February, 1821, to the ownership of the batture in front of his lot and outside of the lots comprised in the transaction of that date. But it is not seen how it could give them the right of claiming from the heirs of *Gravier* money received by the latter as the consideration of a quit claim of all pretensions of *Gravier's* heirs to the same batture. The Act of the Legislature of 1850 authorized the corporation to make batture lots outside of New Levee street, and sell the same, on condition of obtaining the assent of the original parties to the act of 20th September, 1820. The heirs of *Gravier*, one of those original parties, gave their consent, on condition of receiving a proportion of the price. Nothing in the contract shows that the heirs of *Gravier* pretended to act in this matter as *negotiorum gestores* of the heirs of *Jourdan*, or to give away any rights which the latter may have had in the subject matter. That the heirs of *Gravier*, had rights, or at least pretensions to rights, of their own, is acknowledged. Those rights or pretensions were a sufficient consideration in law for the price which they received; and it is out of the question to superadd another consideration not warranted by the terms of their contract of the 30th June, 1851, with the city.

It is therefore adjudged and decreed, that the judgment of the District Court be reversed, and that there be judgment for defendants, with costs in both courts.

MERRICK, C. J. There seems to be equity in the plaintiffs' claim, and I can concur in the conclusions of Mr. Justice Buchanan only by viewing the rights of the parties as settled by the Act of the Legislature, considered as a donation conferring upon the parties named, the right to receive a sum of money in certain proportions.

VOORHIES, J. The view taken by Mr. Chief Justice Merrick of this case, is the only view in which I am able to concur.

*Le Gardeur*, on behalf of plaintiffs and appellees, argued the case elaborately on an application for a re-hearing, but the re-hearing was refused.

NOTE.—The cases of *Jerome Tourné* and *Widow Poydras de Lallande*, against the same defendants turned on the same point and are therefore not reported.